**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NEVERSINK GENERAL STORE,
individually and on behalf of all others
similarly situated,

                Plaintiff,

    v.

MOWI USA, LLC,
MOWI DUCKTRAP, LLC, and
MOWI USA HOLDING, LLC,

                Defendants.

ECF Case

Case No. 1:20-cv-09293-PAE

<u>ORAL ARGUMENT REQUESTED</u>

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

COVINGTON & BURLING LLP

One CityCenter
850 Tenth Street, NW
Washington, DC 20001

1999 Avenue of the Stars
Los Angeles, CA 90067

*Counsel for Defendants*

February 1, 2021

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

PROCEDURAL STANDARD .................................................................................................. 5

ARGUMENT ............................................................................................................................ 5

I.    ALL OF THE RESTAURANT'S CLAIMS SUFFER FROM OVERLAPPING
      DEFECTS. .................................................................................................................... 5

      A.    The Restaurant Still Does Not Allege Which Products It Purchased Or
            Which Labels It Relied Upon. ............................................................................. 6

      B.    The Ducktrap Labels Are Not Materially Misleading. ...................................... 7

            1.    The "Sustainably Sourced" Statement is an Accurate, Qualified
                  Statement About Ducktrap's Sourcing Practices. .................................. 8

            2.    The "All Natural" Statement Accurately Conveys that Ducktrap
                  Products Contain No Artificial Ingredients. ........................................ 11

      C.    The Restaurant Cannot Show Materiality, Reliance, Or Causation Because
            It Admits That It Allegedly Believed Ducktrap's Representations Were
            False, Yet Bought The Products Anyway. ......................................................... 12

II.   THE RESTAURANT FAILS TO STATE A FRAUD CLAIM. ................................... 15

      A.    The Restaurant Fails to Plead Any Alleged Fraud With Particularity. ............ 15

      B.    The Restaurant Fails to Allege Fraudulent Intent. ........................................... 16

III.  THE RESTAURANT FAILS TO ALLEGE AN INJURY COGNIZABLE
      UNDER GBL §§ 349 AND 350. .................................................................................. 17

IV.   THE RESTAURANT FAILS TO STATE ANY WARRANTY CLAIM. ..................... 20

      A.    The Restaurant Has Not Identified Any Warranty That Was Breached. .......... 20

      B.    The Restaurant's Implied-Warranty Claim Also Fails for Lack of Privity. ......... 22

V.    THE RESTAURANT'S UNJUST-ENRICHMENT CLAIM IS DUPLICATIVE. ......... 23

VI.      THE RESTAURANT LACKS STANDING TO PURSUE INJUNCTIVE
         RELIEF............................................................................................................................. 24

CONCLUSION.......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Austin v. Ford Models, Inc.*,
   149 F.3d 148 (2d Cir. 1998)................................................................10

*Axon v. Citrus World, Inc.*,
   354 F. Supp. 3d 170 (E.D.N.Y. 2018) ...........................................11, 21

*Banque Franco-Hellenique de Commerce Int'l et Mar., S.A. v. Christophides*,
   106 F.3d 22 (2d Cir. 1997)................................................................13

*Baron v. Pfizer, Inc.*,
   840 N.Y.S.2d 445 (App. Div. 2007) ....................................................18

*Bd.-Tech Elec. Co. v. Eaton Elec. Holdings LLC*,
   2017 WL 4990659 (S.D.N.Y. Oct. 31, 2017) .....................................6, 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................5

*Berni v. Barilla, S.p.A*,
   964 F.3d 141 (2d Cir. 2020)...........................................................1, 24

*Borenkoff v. Buffalo Wild Wings, Inc.*,
   2018 WL 502680 (S.D.N.Y. Jan. 19, 2018) ....................................17, 18

*Brumfield v. Trader Joe's Co.*,
   2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018) .....................................21

*Bytemark, Inc. v. Xerox Corp.*,
   342 F. Supp. 3d 496 (S.D.N.Y. 2018)................................................23

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016)................................................................5

*Catalano v. BMW of N. Am., LLC*,
   167 F. Supp. 3d 540 (S.D.N.Y. 2016).................................................21

*Chufen Chen v. Dunkin' Brands, Inc.*,
   954 F.3d 492 (2d Cir. 2020)......................................................7, 12, 17

*Corsello v. Verizon N.Y., Inc.*,
   18 N.Y.3d 777 (2012).......................................................................23

*Cummings v. FCA US LLC*,
    401 F. Supp. 3d 288 (N.D.N.Y. 2019) .................................................................23

*Dash v. Seagate Tech. (U.S.) Holdings, Inc.*,
    27 F. Supp. 3d 357 (E.D.N.Y. 2014) ............................................................17, 18

*DiBartolo v. Abbot Labs.*,
    914 F. Supp. 2d 601 (S.D.N.Y. 2012) .................................................................13

*Dillon v. U-A Columbia Cablevision of Westchester*,
    100 N.Y.2d 525 (2003) .......................................................................................13

*Duran v. Henkel of Am., Inc.*,
    450 F. Supp. 3d 337 (S.D.N.Y. 2020)........................................................... *passim*

*E. Materials Corp. v. Mitsubishi Plastics Composites Am., Inc.*,
    2017 WL 4162309 (E.D.N.Y. Sept. 19, 2017) ....................................................20

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*,
    783 F.3d 395 (2d Cir. 2015)........................................................................7, 12, 15

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)..................................................................................8

*In re Fyre Festival Litig.*,
    399 F. Supp. 3d 203 (S.D.N.Y. 2019)..............................................................7, 16

*Gaidon v. Guardian Life Ins. Co. of Am.*,
    94 N.Y.2d 330 (1999) .........................................................................................8

*In re Gen. Mills Glyphosate Litig.*,
    2017 WL 2983877 (D. Minn. July 12, 2017) .......................................................11

*Gerstle v. Nat'l Credit Adjusters, LLC*,
    76 F. Supp. 3d 503 (S.D.N.Y. 2015).....................................................................13

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
    98 N.Y.2d 314 (2002) .........................................................................................8

*Harris v. TD Ameritrade Inc.*,
    338 F. Supp. 3d 170 (S.D.N.Y. 2018)...................................................................10

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020)............................................................ *passim*

*Hyland v. Navient Corp.*,
    2019 WL 2918238 (S.D.N.Y. July 8, 2019) .........................................................16

*In re Interest Rate Swaps Antitrust Litig.*,
  261 F. Supp. 3d 430 (S.D.N.Y. 2017) .............................................................7, 24

*Izquierdo v. Mondelez Int'l, Inc.*,
  2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) .......................................................15

*Izquierdo v. Panera Bread Co.*,
  450 F. Supp. 3d 453 (S.D.N.Y. 2020) ...................................................................25

*J&R Multifamily Grp., Ltd. v. U.S. Bank N.A.*,
  2019 WL 6619329 (S.D.N.Y. Dec. 5, 2019) ........................................................13

*Jesmer v. Retail Magic, Inc.*,
  863 N.Y.S.2d 737 (App. Div. 2008) ......................................................................22

*Kennedy v. Mondelez Global LLC*,
  2020 WL 4006197 (E.D.N.Y. July 10, 2020) ..................................................20, 25

*Koch v. Christie's Int'l PLC*,
  785 F. Supp. 2d 105 (S.D.N.Y. 2011) ...................................................................13

*Lugones v. Pete & Gerry's Organic, LLC*,
  440 F. Supp. 3d 226 (S.D.N.Y. 2020)............................................................ *passim*

*Lynch v. City of New York*,
  952 F.3d 67 (2d Cir. 2020) .....................................................................................5

*Mahoney v. Endo Health Sols., Inc.*,
  2016 WL 3951185 (S.D.N.Y. July 20, 2016) ........................................................22

*Marshall v. Hyundai Motor Am.*,
  334 F.R.D. 36 (S.D.N.Y. 2019) .............................................................................18

*McNulty v. Polar Corp.*,
  2020 WL 5658667 (S.D.N.Y. Sept. 23, 2020) ................................................18, 21

*Moore v. PaineWebber, Inc.*,
  189 F.3d 165 (2d Cir. 1999) ..................................................................................15

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) ..................................................................................24

*Niles v. Beverage Mktg. USA, Inc.*,
  2020 WL 4587753 (E.D.N.Y. Apr. 16, 2020) ........................................................22

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015).............................................................................15, 18

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,*
    85 N.Y.2d 20 (1995) ...................................................................................................8

*Parks v. Ainsworth Pet Nutrition, LLC,*
    377 F. Supp. 3d 241 (S.D.N.Y. 2019) .................................................11, 12, 13, 14

*Pirri v. Cheek,*
    2019 WL 2472438 (S.D.N.Y. June 13, 2019) .........................................................24

*Podpeskar v. Dannon Co.,*
    2017 WL 6001845 (S.D.N.Y. Dec. 3, 2017) ..........................................................11

*Preira v. Bancorp Bank,*
    885 F. Supp. 2d 672 (S.D.N.Y. 2012) ....................................................................18

*Segedie v. Hain Celestial Grp., Inc.,*
    2015 WL 2168374 (S.D.N.Y. May 7, 2015) ............................................................7

*Shcherb v. Angi Homeservices Inc.,*
    2020 WL 2571041 (S.D.N.Y. May 21, 2020) .........................................................23

*In re Sling Media Slingbox Adver. Litig.,*
    202 F. Supp. 3d 352 (S.D.N.Y. 2016) ......................................................................6

*Small v. Lorillard Tobacco Co.,*
    94 N.Y.2d 43 (1999) ...............................................................................................18

*Weisblum v. Prophase Labs, Inc.,*
    88 F. Supp. 3d 283 (S.D.N.Y. 2015) ......................................................................22

*Westchester Cty. v. Gen. Motors Corp.,*
    555 F. Supp. 290 (S.D.N.Y. 1983) .........................................................................22

*Williams v. Citibank, N.A.,*
    565 F. Supp. 2d 523 (S.D.N.Y. 2008) ......................................................................5

**Statutes**

N.Y. Gen. Bus. Law § 349 ................................................................................... *passim*

N.Y. Gen. Bus. Law § 350 ................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................................15

**Regulations**

16 C.F.R. § 260.2 .....................................................................................................10

16 C.F.R. § 260.4(c)....................................................................................................................10

**Other Authorities**

Food & Drug Admin., Use of the Term "Natural" in the Labeling of Human Food
     Products; Request for Information and Comments,
     80 Fed. Reg. 69,905-01 (Nov. 12, 2015) ...............................................................12

Cathy A. Roheim et al., *The Elusive Price Premium for Ecolabelled Products:
     Evidence from Seafood in the UK Market*, 62 J. Agric. Econ. 655 (2011)..........................9, 19

## INTRODUCTION

Plaintiff Neversink General Store, a restaurant in Neversink, New York (the "Restaurant"), brought this putative class action claiming that certain statements on the labels of Mowi Ducktrap's smoked Atlantic salmon products are misleading. But the Restaurant's original complaint did not even allege which Ducktrap products the Restaurant purchased and when. That is because the Restaurant copied and pasted its allegations from another plaintiff's complaint in a different suit.

When Defendants pointed out this and other basic deficiencies in its allegations, the Restaurant amended its complaint—yet changed very little. The Restaurant still does not identify which specific products it bought and when, saying it would need discovery to figure that out. It still claims that it is misleading to describe Ducktrap salmon as "sustainably sourced," based on surveys about how consumers allegedly understand *different* words and phrases, and ignoring that Ducktrap salmon is sourced from sites that reputable, independent organizations have certified as sustainable. It still claims that it is misleading to describe Ducktrap products as "All Natural," even though it does not allege that they contain any artificial ingredients. It bases all of its claims on an alleged September 2020 purchase, despite admitting that it knew these statements were misleading no later than August 2020. It still tries to plead a consumer-protection claim, without alleging the requisite injury. It still tries to plead a fraud claim, without the requisite particularity. It still tries to plead warranty claims, based on warranties that Mowi never made. And it still tries to seek injunctive relief, even though it is "not likely to encounter future harm of the kind that makes injunctive relief appropriate." *Berni v. Barilla, S.p.A*, 964 F.3d 141, 147 (2d Cir. 2020).

The Restaurant has now had two opportunities to state a claim, and it still has not done so. This Court should dismiss the First Amended Class Action Complaint with prejudice.

## BACKGROUND

Defendant Mowi Ducktrap, a company based in Maine, produces a line of smoked Atlantic salmon that it markets under the name Ducktrap River of Maine ("Ducktrap").  FAC ¶ 22, ECF No. 24.  Defendant Mowi USA produces and delivers fish on behalf of Ducktrap.  *Id.* ¶ 21.  Defendant Mowi USA Holding is the parent company of Mowi USA and Mowi Ducktrap.  *Id.* ¶ 23; Rule 7.1 Corporate Disclosure Statement for Mowi USA Holding, LLC, ECF No. 27.

The Restaurant alleges that it purchased unidentified Ducktrap smoked salmon "Products" "for personal use at the [Restaurant]" "[o]n several occasions over the last two years."  FAC ¶¶ 16, 78.  However, it omits any details about these purchases, save one:  In September 2020—*after* the complaint that the Restaurant copied-and-pasted was filed[1]—the Restaurant allegedly purchased Ducktrap "Products" from two distributors, Sysco and Ginsberg's Foods.  *Id.* ¶ 78.  The Restaurant claims that "discovery will allow it to identify other Mowi products" that it purchased.  *Id.* ¶ 79.

The Amended Complaint identifies two statements on Ducktrap labels that the Restaurant alleges are false or deceptive, each discussed in turn below.  *See* FAC ¶¶ 30–32.[2]

**The Sustainably Sourced Representation.**  The Amended Complaint first takes issue with the statement that Ducktrap smoked Atlantic salmon is "[s]ustainably sourced."  FAC ¶ 33.  The Restaurant dubs this the "Sustainability Representation," even though the label it cites never uses the word "sustainability."  *Id.* ¶ 30.  The Restaurant claims that "sustainably sourced" leads

---

[1] The Restaurant mostly copies and reshuffles allegations from a complaint filed in *Organic Consumers Association v. Mowi ASA, et al.*, 2020 CA 003368 B (D.C. Super. Ct.).  *See* FAC ¶¶ 133, 150.  The Mowi Defendants in that case have moved to dismiss that complaint.

[2] Originally, the Restaurant also claimed that it was misled into buying a Ducktrap product marketed as "Naturally Smoked Salmon FROM MAINE."  Compl. ¶¶ 72, 74, ECF No. 1.  The Restaurant dropped this claim after Defendants explained that Ducktrap stopped using that label years before the Restaurant allegedly bought any Ducktrap product.  *See* Defs.' Mem. Supp. Mot. Dismiss 1, 5 & n.6, 11, 18, ECF No. 19.

consumers to believe that Ducktrap products use salmon sourced "in accordance with higher environmental and animal welfare practices" when, in practice, Ducktrap allegedly imports salmon from farms that use "unsustainable" techniques.  *Id.* ¶ 37.  Yet, as the audit reports cited in the Amended Complaint show, Ducktrap in fact sources its salmon from locations that reputable organizations like the Aquaculture Stewardship Council ("ASC") have certified as sustainable.[3]

The Restaurant also alleges that Ducktrap falsely markets its products as "farm[ed] sustainably," "eco-friendly," and "environmentally sustainable."  FAC ¶ 3.  None of those phrases appears on either of the labels pictured in the Amended Complaint.  *See id.* ¶ 31.  Those phrases appeared only in social media posts that the Restaurant challenged in its original Complaint.  *See* Compl. ¶¶ 25, 27–28, ECF No. 1.  The Amended Complaint dropped any challenge to those posts after Defendants' initial motion to dismiss pointed out that the Restaurant had excerpted them misleadingly and never relied upon them.  *See* Defs.' Mem. at 3–4, 10, ECF No. 19.

**The Natural Representation.**  The Restaurant also challenges the statement that Ducktrap smoked Atlantic salmon is "All Natural."  FAC ¶¶ 30–31, 65.  The Restaurant does not allege that Ducktrap products are *made* of artificial or synthetic ingredients.  Rather, it claims that "All Natural" is misleading because Ducktrap sources salmon from farms that use "artificial chemicals" like antibiotics, pesticides, and disinfectants to combat disease among the fish.  *Id.* ¶¶ 66–73.

The Amended Complaint also repeatedly mentions a representation that Ducktrap products are "100% All Natural" or "100% natural."  FAC ¶¶ 8, 30, 69.  Yet neither phrase appears on the two labels that the Restaurant excerpts in the Amended Complaint.  *See id.* ¶¶ 31, 65.

---

[3] Because the Restaurant incorporated these audit records by reference into its Amended Complaint, but did not attach them, Defendants reproduce them alongside this motion.  *See* Decl. of Donald Cynewski ("Cynewski Decl.") ¶ 7 & Ex. B (reproducing seven of the audit documents appearing on the webpage cited in FAC ¶ 54 n.31 and relied upon in FAC ¶¶ 54–56, 58, 72).

**The Restaurant's Lawsuit.**  The Restaurant tries to spin the Sustainably Sourced and Natural Representations into eight causes of action.  But the Restaurant does not allege that it purchased Ducktrap products containing both Representations.  The Amended Complaint defines the "Products" as "smoked Atlantic salmon products marketed under the brand name Ducktrap River of Maine," FAC ¶ 1, and includes pictures of two "[e]xample[]" labels, *id.* ¶ 31.  But only one of these labels includes the Sustainably Sourced Representation.  *Id.*  Although the Restaurant alleges that "Plaintiff purchased at least *the* Ducktrap River of Maine Smoked Atlantic Salmon" in September 2020, *id.* ¶ 79 (emphasis added), it does not specify whether it purchased any of the two "example" labels, or which specific Representation (if any) appeared on "the" product it allegedly purchased.  Moreover, the Amended Complaint still does not explain how the Restaurant could have purchased Ducktrap salmon "for personal use," *id.* ¶ 16, when it is a *restaurant* that cannot itself consume salmon, and presumably bought the salmon to serve to customers who would not have seen the alleged Representations.

Although the Amended Complaint names a single plaintiff (from New York), it asserts a claim under the "Consumer Fraud Acts" of several different states.  FAC ¶¶ 97–109 (Count I).[4]  The next six counts allege that both statements violated §§ 349 and 350 of the New York General Business Law ("GBL"); amounted to fraud; and gave rise to express, implied, or common-law warranties that Defendants breached.  *Id.* ¶¶ 110–76 (Counts II–VII).  And the final count alleges that Defendants were unjustly enriched by the sale of Ducktrap products.  *Id.* ¶¶ 177–83 (Count VIII).  The Restaurant seeks to certify a national, multi-state, and/or New York class of Ducktrap customers and to secure monetary and injunctive relief on the classes' behalf.  *Id.* ¶¶ 85, 95–96.

---

[4] Confusingly, the Restaurant alleges that its putative "Consumer Fraud Multi-State Class" is comprised of customers from thirteen states, FAC ¶ 85, but Count I (which it asserts on behalf of this putative class, *see id.* ¶ 98) appears to incorporate only ten of those states, *see id.* ¶ 98 n.43.

## PROCEDURAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  When reviewing a Rule 12(b)(6) motion, a court must "accept all 'well-pleaded factual allegations' in the complaint as true" and "construe all reasonable inferences" in the plaintiff's favor.  *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).  However, the court need not accept as true any conclusory allegations, legal conclusions masquerading as facts, or allegations that are contradicted by materials that are incorporated into the complaint or otherwise properly before the court.  *Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008).

When a motion to dismiss makes a facial challenge to a district court's jurisdiction under Rule 12(b)(1), the court similarly accepts the complaint's well-pleaded allegations as true.  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  The court's task "is to determine whether the Pleading allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue."  *Id.* (quotations omitted).

## ARGUMENT

### I.    ALL OF THE RESTAURANT'S CLAIMS SUFFER FROM OVERLAPPING DEFECTS.

The Amended Complaint contains three basic pleading defects, any of which are fatal to all of Plaintiffs' claims.  First, the Amended Complaint still fails to identify the particular products that the Restaurant allegedly purchased and the particular labels that it allegedly relied upon.  Second, neither of the Representations in the only two "example" labels that the Restaurant pastes into its complaint is materially misleading.  Third, the Restaurant could not have relied upon or

been injured by either Representation because it alleges that it purchased the Products in September 2020, *after* it admits it learned of the Representations' allegedly misleading nature.[5]

### A.     The Restaurant Still Does Not Allege Which Products It Purchased Or Which Labels It Relied Upon.

Even given the opportunity to amend its complaint, the Restaurant still fails to identify which Ducktrap products it supposedly purchased or which Representations it relied upon.  The Restaurant alleges that it purchased "at least *the* Ducktrap River of Maine Smoked Atlantic Salmon."  FAC ¶ 79 (emphasis added).  But whether that refers to a particular product or the whole Ducktrap lineup is entirely unclear.  *See id.* ¶ 1 (referring to a line of "smoked Atlantic salmon products marketed under the brand name Ducktrap River of Maine").  This matters because, as the images in Paragraph 31 demonstrate, the Ducktrap line of products uses multiple labels.

The Restaurant still does not allege *which* particular product it supposedly purchased based on *which* allegedly deceptive label.  It gives two "[e]xamples" of Ducktrap labels.  *See* FAC ¶ 31. But it never actually alleges that it purchased products featuring either of those particular labels.[6]

Instead, the Restaurant alleges that it will need discovery from *Defendants* to identify its own purchases.  *See* FAC ¶ 79.  The Restaurant has it backwards:  the Restaurant must identify the products that it purchased to survive a motion to dismiss, because failing to "specify the precise products" that it purchased means that the Restaurant "has not pled [its claims] with the specificity required by Rule 8."  *Bd.-Tech Elec. Co. v. Eaton Elec. Holdings LLC*, 2017 WL 4990659, at *4–

---

[5] This motion applies New York law to every claim because the Restaurant is a New York business suing based on products that it allegedly purchased in New York.  *See* FAC ¶¶ 7, 16, 116–17; *In re Sling Media Slingbox Adver. Litig.*, 202 F. Supp. 3d 352, 357 (S.D.N.Y. 2016) (applying New York law because plaintiffs "purchased their [products] in New York and were residents of New York at the time of their purchases").

[6] Nor could it.  One of those labels was discontinued more than eight years ago, and Defendants have never sold the other label to Sysco or Ginsberg's Foods, through whom the Restaurant claims to have purchased "the" product.  *See* FAC ¶ 78; Cynewski Decl. ¶¶ 4–5.

6 (S.D.N.Y. Oct. 31, 2017); *see also In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 216 (S.D.N.Y. 2019) (generalized allegations that plaintiff relied on all "misrepresentations" are insufficient even under Rule 8(a)).

The Restaurant's "refusal to specify the particular products [purchased]" leaves Defendants only to guess that "[s]omewhere in this series of products are those that were specifically [purchased]." *Bd.-Tech Elec. Co.*, 2017 WL 4990659, at *5. Such allegations are insufficient to give even basic notice of the Restaurant's claims. *See id.* (dismissing false advertising claim under Rule 8(a) because plaintiff failed to specify the precise "product(s) within a broader product line" that it allegedly tested and determined fell short of the certification advertised by defendants); *Segedie v. Hain Celestial Grp., Inc.*, 2015 WL 2168374, at *12 (S.D.N.Y. May 7, 2015) (plaintiffs may not bring consumer-protection claims based on unidentified products).

## B.   The Ducktrap Labels Are Not Materially Misleading.

All of the Restaurant's claims rest on the allegation that the Sustainably Sourced and Natural Representations are false or deceptive. Yet the Amended Complaint does not plausibly allege either statement is materially misleading. So, even if the Restaurant had properly alleged that it bought products carrying these Representations, it still would have failed to state any claim.[7]

Under New York law, fraud, GBL, and warranty claims all require a plaintiff to allege that a plaintiff made a false, misleading, or inaccurate statement. *See Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015) (fraud claim requires "a material misrepresentation or omission of fact"); *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020)

---

[7] The Restaurant's failure to plausibly allege that the Sustainably Sourced and Natural Representations were materially misleading defeats not just the Restaurant's GBL, fraud, and warranty claims, but also its unjust-enrichment claim, because "without a viable underlying claim of illegality, an unjust enrichment claim 'must be dismissed.'" *In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 500 (S.D.N.Y. 2017) (Engelmayer, J.) (citation omitted).

(GBL § 349 claim requires a "deceptive act[]"); *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d

314, 324 n.1 (2002) ("The standard for recovery under [GBL] § 350, while specific to false

advertising, is otherwise identical to section 349."); *Lugones v. Pete & Gerry's Organic, LLC*, 440

F. Supp. 3d 226, 244 (S.D.N.Y. 2020) (warranty claims require "a material statement amounting

to a warranty" and "breach of this warranty" (emphasis omitted)).  For purposes of a GBL and

warranty claim, a deceptive statement is one that is "likely to mislead a reasonable consumer acting

reasonably under the circumstances."  *Oswego Laborers' Local 214 Pension Fund v. Marine*

*Midland Bank*, 85 N.Y.2d 20, 26 (1995); *see Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d

453, 469 (S.D.N.Y. 2020) ("For a 'statement or representation to provide the basis for an express

warranty claim, it still must meet the threshold requirement of being material to a reasonable

consumer.'" (citation omitted)).  Fraud, however, requires a *false* statement—and "[a] practice

may carry the capacity to mislead or deceive a reasonable person but not be fraudulent."  *Gaidon*

*v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 348 (1999).  "It is well settled that a court may

determine as a matter of law that an allegedly deceptive advertisement would not have misled a

reasonable consumer."  *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

### 1.    The "Sustainably Sourced" Statement is an Accurate, Qualified Statement About Ducktrap's Sourcing Practices.

The Amended Complaint focuses first on an isolated statement that appears on just one of

the two "example" labels:  that Ducktrap smoked Atlantic salmon is "sustainably sourced."  FAC

¶ 33.  Even if the Restaurant bought a product containing this Representation—something it fails

to allege—it has not and cannot allege that Ducktrap *sources* its salmon in an unsustainable way.

Like its original Complaint, the Restaurant continues to claim that the phrase "sustainably

sourced" is misleading based on surveys about how consumers allegedly understand *different*

words and phrases, such as "sustainable," FAC ¶ 34, and "sustainably produced," *id.* ¶ 35.  *Those*

phrases do not appear on Ducktrap's label.  Similarly, the Restaurant continues to allege that Ducktrap leads consumers to believe its products are "farm[ed] sustainably," "environmentally sustainable," and "eco-friendly."  *Id.* ¶ 3.  Again, none of *those* phrases appears on the Ducktrap label.  *See id.* ¶ 33.  The Amended Complaint thus fails to allege how "sustainably *sourced*"—the actual phrase used on the label—could mislead a reasonable consumer, much less the Restaurant.

The Sustainably Sourced Representation means that Ducktrap sources its salmon from farms that abide by best practices for sustainable aquaculture, as certified by reputable, independent organizations.  Indeed, the 2011 article cited in the Amended Complaint confirms that consumers associate sustainable seafood with such certifications.  *See* Cathy A. Roheim et al., *The Elusive Price Premium for Ecolabelled Products: Evidence from Seafood in the UK Market*, 62 J. Agric. Econ. 655, 656 (2011) (cited in FAC ¶ 6 & n.1) (explaining that certifications like those from the Marine Stewardship Council ("MSC") "signal[] to consumers that the product was produced from a sustainable fishery").[8]

Documents cited by the Restaurant confirm that Ducktrap has obtained the necessary third-party certifications to substantiate the Sustainably Sourced Representation.  For example, audit records cited in the Amended Complaint show that ASC has certified as sustainable sites from which Ducktrap sources its salmon, in compliance with its industry Salmon Standard.  *See generally* Mowi, *ASC Dashboard*, https://mowi.com/sustainability/aquaculture-stewardship-council/asc-dashboard/ (last visited Jan. 28, 2021) (cited in FAC ¶ 54 & n.31); Cynewski Decl., Ex. B-1–B-7.  Similarly, as a YouTube video cited in the original Complaint explained, Ducktrap sources "BAP certified product," meaning that it has been certified by Best Aquaculture Practices,

---

[8] *See* Decl. of Ashley Simonsen ("Simonsen Decl."), Ex. A (attaching the full study cited in FAC ¶ 6 & n.1).

a group dedicated to ensuring responsible aquaculture practices by recognizing sustainable seafood production through its certification program.  *See* Cynewski Decl., Ex. A (reproducing full webpage cited in Compl. ¶ 24 & n.5, ECF No. 1).[9]

Seeking to avoid this result, the Amended Complaint also accuses Ducktrap of violating Federal Trade Commission ("FTC") guidance on use of the word "sustainable," but the Restaurant misses the mark.  The Restaurant's contention rests on a single online press release advising jewelry companies that their marketing may violate the FTC's Guides for the Jewelry, Precious Metals, and Pewter Industries ("Jewelry Guides").  *See* FAC ¶ 34 n.11.  Defendants are not jewelry marketers, and the Jewelry Guides do not establish that there is anything misleading about how Ducktrap uses the phrase "sustainably sourced" in the context of salmon farming.

Tellingly, the Amended Complaint ignores on-point FTC guidance—the Green Guides. The Green Guides advise companies that they may use "clear and prominent qualifying language that limits the claim [of sustainability] to a specific benefit or benefits"—here, that Ducktrap's salmon is sustainably *sourced*.  *See* FTC Green Guides, 16 C.F.R. § 260.4(c) ("Marketers can qualify general environmental benefit claims to prevent deception about the nature of the environmental benefit being asserted.").  The Green Guides further permit environmental marketing claims to be substantiated by "competent and reliable scientific evidence . . . based on standards generally accepted in the relevant scientific fields."  FTC Green Guides, 16 C.F.R. § 260.2.  Consistent with this guidance, the statement that Ducktrap's salmon is "sustainably

---

[9] *See* BAP, Who We Are: Stewards of Aquaculture, https://www.bapcertification.org/WhoWeAre (last visited Jan. 28, 2021).  While the Restaurant dropped any claim relating to the YouTube video, it cannot "plead around" the facts contained in that video by "omitting them from an amended complaint."  *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 19 n.18 (S.D.N.Y. 2018); *see also Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998) (plaintiff "cannot benefit from amending her complaint to omit [the] admissions" from her previous complaint), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002).

sourced" is not a broad claim of "higher environmental and animal welfare practices," as the Restaurant contends.  FAC ¶ 37.  Rather, it is a qualified (and accurate) representation limited to how Ducktrap sources its salmon—*i.e.*, from sites certified as sustainable by reputable, independent organizations, such as BAP and ASC.

### 2. The "All Natural" Statement Accurately Conveys that Ducktrap Products Contain No Artificial Ingredients.

Unlike most "natural" claims that survive a motion to dismiss, the Restaurant does not allege that Ducktrap products contain artificial *ingredients*.  *See Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018) (distinguishing claims that a product contained unnatural ingredients from claims challenging only how a product is produced).  Instead, the Restaurant alleges that it is misleading to describe Ducktrap salmon as "all natural" because, at some point in the *production* process, farms from which Ducktrap sources its salmon treat the fish with "artificial chemicals such as antibiotics and pesticides."  FAC ¶ 69; *see also id.* ¶¶ 9, 72 (alleging Mowi "treats" salmon with antibiotics and an insecticide and uses disinfectants).  Notably, the Restaurant does not allege that those "chemicals" remain—even in trace amounts—in Ducktrap's products.

Courts routinely dismiss "natural" claims that challenge only how a product is produced, rather than the product's ingredients.  *See, e.g.*, *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247–48 (S.D.N.Y. 2019) (dismissing "Natural" claims where plaintiff alleged that products contained trace amounts of a pesticide, but not that the products included unnatural *ingredients*); *Podpeskar v. Dannon Co.*, 2017 WL 6001845, at *4–5 (S.D.N.Y. Dec. 3, 2017) (dismissing "All Natural" claims where plaintiff did not allege that any *ingredient* used in yogurt was unnatural, but only that, at some point in the production process, cows might have been fed antibiotics or given hormones); *see also In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) ("[I]t is not plausible to allege that the statement 'Made with 100%

Natural Whole Grain Oats' means that there is no trace [pesticides] in [the] Products or that a reasonable consumer would so interpret the label.").

Guidance from the Food and Drug Administration ("FDA") further demonstrates that it is not misleading to describe Ducktrap smoked salmon as "all natural."  The FDA's "longstanding policy for the use of the term 'natural' on the labels of human food" is "to interpret the term 'natural' as meaning that 'nothing artificial or synthetic . . . has been included in, or has been added to, a food that would not normally be expected to be in the food."  Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments, 80 Fed. Reg. 69,905-01, 69,906 (Nov. 12, 2015).  The FDA's "policy" is "not to restrict the use of the term 'natural'" beyond this.  *Id.*  This means that the FDA's "policy . . . *was not intended to address food production methods*, such as . . . the use of pesticides[] or the use of specific animal husbandry practices, nor did it explicitly address food processing or manufacturing methods."  *Id.* (emphasis added).  The Amended Complaint does not even cite this FDA guidance, much less explain how a label that is consistent with it could mislead a reasonable consumer.  *See Parks*, 377 F. Supp. 3d at 247 (relying on FDA guidance to find "natural" claims were not materially misleading).

### C.   The Restaurant Cannot Show Materiality, Reliance, Or Causation Because It Admits That It Allegedly Believed Ducktrap's Representations Were False, Yet Bought The Products Anyway.

The Restaurant's claims all fail because the Amended Complaint does not plead the materiality, causation, and reliance elements of those claims.  *See Chufen Chen*, 954 F.3d at 500 (GBL §§ 349 and 350 require plaintiff to allege that the deceptive acts were "misleading in a material way" and that plaintiff was "injured as a result"); *Fin. Guar. Ins. Co.*, 783 F.3d at 402 (fraud requires "material misrepresentation . . . upon which the plaintiff reasonably relied," "caus[ing] injury"); *Lugones*, 440 F. Supp. 3d at 244 (warranty claim requires "a *material*

*statement* amounting to a warranty," "the buyer's *reliance* on this warranty as a basis for the contract," "*breach* of this warranty," and "injury to the buyer *caused* by the breach").

The Restaurant has pleaded itself out of court because, by its own admission, it believed that the Sustainably Sourced and Natural Representations were false when it purchased Ducktrap products in September 2020.  *See* FAC ¶¶ 78, 133, 150.  A plaintiff that has not been "personally misled or deceived" has not suffered actual injury "as a result of" any alleged deception, as required to state a GBL claim.  *Gerstle v. Nat'l Credit Adjusters, LLC*, 76 F. Supp. 3d 503, 513 (S.D.N.Y. 2015) (marks and citation omitted); *see also Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 119 (S.D.N.Y. 2011) (dismissing GBL claim based on purchase of counterfeit wine where plaintiff knew wine was counterfeit prior to purchase).  Nor can a plaintiff state a fraud claim based on statements that it "had reason to know were false."  *Banque Franco-Hellenique de Commerce Int'l et Mar., S.A. v. Christophides*, 106 F.3d 22, 27 (2d Cir. 1997); *J&R Multifamily Grp., Ltd. v. U.S. Bank N.A.*, 2019 WL 6619329, at *8 (S.D.N.Y. Dec. 5, 2019) ("Plaintiff cannot claim reliance if it acted upon a statement which it knew to be false.").  Similarly, a plaintiff cannot have "relied . . . to [his] detriment" upon a warranty that he allegedly knew was false when he entered the contract.  *Parks*, 377 F. Supp. 3d at 248; *see also DiBartolo v. Abbot Labs.*, 914 F. Supp. 2d 601, 625–26 (S.D.N.Y. 2012) (dismissing warranty claim because plaintiff "could not have relied on [defendant's 'overstatements'] to her detriment").  Finally, a plaintiff cannot recover in unjust enrichment for purchases he "voluntarily made with full knowledge of the facts."  *Dillon v. U-A Columbia Cablevision of Westchester*, 100 N.Y.2d 525, 526 (2003).  In other words, if the Restaurant allegedly knew a representation on a Ducktrap label was misleading but purchased the product anyway, it cannot assert any fraud, GBL, warranty, or unjust-enrichment claim.

The Amended Complaint identifies only one actual "date" when the Restaurant allegedly purchased an (unidentified) Ducktrap product: "in or around September of 2020." FAC ¶ 78. Yet the Amended Complaint admits that the Restaurant allegedly "discover[ed]" the deceptive nature of the Sustainably Sourced and Natural Representations one month earlier in August 2020, after another plaintiff in another court filed the complaint that the Restaurant now copies. *See id.* ¶¶ 133, 150 & nn.44–45. The Restaurant's admission that it knew about the Representations' supposedly deceptive nature in August 2020, and yet proceeded to purchase Ducktrap products in September 2020, precludes it from maintaining any claim based on that alleged purchase.

But the problem is broader than just the alleged September 2020 purchase. The Restaurant's admission that it bought Ducktrap products despite allegedly knowing that the Representations were false undercuts any conclusory allegation in the Amended Complaint that those statements were *ever* material to its purchasing decisions, or that the Restaurant *ever* relied on those Representations in purchasing Ducktrap products. The Amended Complaint reveals that, despite allegedly "discover[ing]" that the statements on Ducktrap's labels were deceptive in August 2020, FAC ¶¶ 133, 150, the Restaurant willingly paid an alleged "premium" price for those products the very next month, *see id.* ¶¶ 16–17, 78. Thus, although the Restaurant baldly asserts that it "would not have been willing to pay the same amount for the Products" but for the Sustainably Sourced and Natural Representations, *id.* ¶ 17, it admits that it did exactly that.

This admission is fatal to all of the Restaurant's claims. If the Restaurant bought Ducktrap products allegedly knowing that the Representations were misleading, there is no plausible reason to believe those Representations ever "affect[ed] [the Restaurant's] choice of, or conduct regarding, [the] product[s]." *Parks*, 377 F. Supp. 3d at 248 (to be material, statement must have "involve[d] information that [was] important to consumers and, hence, likely to affect their choice

of, or conduct regarding, a product" (citation omitted)); *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 170 (2d Cir. 1999) ("A misrepresentation is material to a fraud claim only if it is . . . likely to be deemed significant to a reasonable person considering whether to enter into the transaction."). Nor is there any basis to believe that the Representations ever "induced" the Restaurant to purchase Ducktrap products. *Fin. Guar. Ins. Co.*, 783 F.3d at 402 (fraud requires plaintiff to allege that "defendant's misrepresentation induced plaintiff to engage in the transaction"); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (plaintiff must have been injured "as a result of the allegedly deceptive act" to assert claims under GBL §§ 349 and 350); *Lugones*, 440 F. Supp. 3d at 244 (plaintiff must have relied on warranty "as a basis" for its contract). All of the Restaurant's claims thus fail for the independent reason that the Amended Complaint contradicts the Restaurant's conclusory allegations that the Representations caused it to buy Ducktrap products.

## II.   THE RESTAURANT FAILS TO STATE A FRAUD CLAIM.

The Restaurant's fraud claim also fails because the Restaurant has not pleaded this claim with the particularity Rule 9(b) requires and because the Restaurant fails to allege fraudulent intent.

### A.   The Restaurant Fails to Plead Any Alleged Fraud With Particularity.

Rule 9(b) requires the Restaurant to plead its fraud claims "with particularity." Fed. R. Civ. P. 9(b). To do so, the Restaurant must "(1) detail the statements . . . that [it] contends are fraudulent, (2) identify the speaker, (3) state where and when the statements . . . were made, and (4) explain why the statements . . . are fraudulent." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 352–53 (S.D.N.Y. 2020) (Engelmayer, J.).

As discussed, the Restaurant does not bother to clarify in the Amended Complaint which Ducktrap products it purchased based on which alleged representations and when. Its allegations are thus insufficient under even Rule 8(a), *see supra* § I.A, much less the heightened pleading requirements of Rule 9(b), *see Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *9

(S.D.N.Y. Oct. 26, 2016) (dismissing fraud claims where plaintiff failed to allege when or where he purchased the product, or how much he paid for it).  The Restaurant's generalized, conclusory allegation that it purchased unspecified Ducktrap products—which apparently have different labels—is insufficient to give Defendants particularized notice of its fraud claim.  *See In re Fyre Festival*, 399 F. Supp. 3d at 216–17 ("[b]road assertions of reliance on multiple misstatements covering at least a four-month period of time are insufficient" even under Rule 8(a)); *Hyland v. Navient Corp.*, 2019 WL 2918238, at \*12 (S.D.N.Y. July 8, 2019) (applying Rule 9(b) to dismiss deceptive trade practices claims that sounded in fraud, because plaintiffs generally alleged only that defendant made an unspecified number of representations to plaintiffs over several years).

### B.    The Restaurant Fails to Allege Fraudulent Intent.

A plaintiff alleging fraud must plead specific facts giving rise to a "strong inference of fraudulent intent, which may be established by (1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *In re Fyre Festival*, 399 F. Supp. 3d at 213 (cleaned up).  "[C]onclusory and legal allegations, devoid of particularized facts giving rise to an inference of scienter, are insufficient . . . ."  *Hesse*, 463 F. Supp. 3d at 473.

As before, the Amended Complaint lacks any specific factual allegation that would support a "strong inference" of fraudulent intent.  It alleges Defendants made misrepresentations "in order to induce Plaintiff and putative Class Members to purchase the Products," FAC ¶ 172, and that "[t]he only conceivable purpose for falsely and deceptively making these claims about the Products is to stimulate sales and enhance Mowi's profits," *id.* ¶ 74.  But "simply alleging a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent." *Duran*, 450 F. Supp. 3d at 354 (dismissing similar fraud claims challenging product labels).

16

The only effort the Restaurant makes to cure this deficiency is to allege (without any specific factual allegations) that Defendants "intended" for consumers to rely on the Representations, FAC ¶¶ 19, 104, and that Defendants "knew, or in the exercise of reasonable care should have known," that these statements were misleading, *id.* ¶¶ 103.  These are precisely the type of conclusory allegations that courts routinely reject.  *See Hesse*, 463 F. Supp. 3d at 473 (dismissing fraud claims based on conclusory allegations that defendant "knew or recklessly disregarded the fact" that its statements were false and "intend[ed] that Plaintiffs and other consumers rely on [them]"); *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 362 (E.D.N.Y. 2014) (conclusory allegation that defendant intentionally concealed facts about its products to induce plaintiff to purchase them is not enough to adequately plead fraudulent intent).

## III. THE RESTAURANT FAILS TO ALLEGE AN INJURY COGNIZABLE UNDER GBL §§ 349 AND 350.

To state a GBL claim, the Restaurant must allege that Ducktrap's labels were (1) directed at consumers and (2) materially misleading, and (3) that they injured the Restaurant.  *Chufen Chen*, 954 F.3d at 500. In addition to failing to allege any material misrepresentation, *see supra* § I.B, the Restaurant has failed to plead an injury that is cognizable under the GBL.[10]

The Restaurant continues to allege that it "would not have purchased the Products had it known that [Ducktrap's statements] were false and misleading."  FAC ¶ 82; *see also id.* ¶¶ 7, 12, 17, 106, 112, 121, 130, 146.  This type of injury is not cognizable under the GBL.  *See Borenkoff v. Buffalo Wild Wings, Inc.*, 2018 WL 502680, at *3–4 (S.D.N.Y. Jan. 19, 2018) (loss of purchase

---

[10] Count I alleges violations of the "State Consumer Fraud Acts" of New York and nine other states in the alternative to the Restaurant's GBL claims,  FAC ¶ 98 n.43, but purports to bring those claims on behalf of consumers in New York and *twelve* other states, *see id.* ¶¶ 85, 99.  Putting aside this inconsistency, New York law governs the Restaurant's own claims, *see supra* note 5, including Count I, which merely duplicates the GBL claims, *see* FAC ¶ 98 n.43 (citing N.Y. Gen. Bus. Law § 349).  Count I thus fails for the same reasons as the Restaurant's GBL claims.

price, alone, does not constitute "actual injury"); *Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (App. Div. 2007) (plaintiff's allegation that she would not have purchased the product absent defendant's allegedly deceptive practices did not state a "cognizable injury").  It is "well-settled" that a consumer "whose purchase was allegedly procured through deception" cannot recover "a refund of the price" under GBL §§ 349 or 350.  *Dash*, 27 F. Supp. 3d at 361; *see also Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) (rejecting the theory that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under [GBL] § 349").  This is because "deceived consumers may nevertheless receive—and retain the benefits of—something of value, even if it is not precisely what they believed they were buying."  *Dash*, 27 F. Supp. 3d at 361–62.

Alternatively, the Restaurant attempts to proceed on a price-premium theory—claiming "that, on account of a materially misleading practice, [it] purchased a product and did not receive the full value of [its] purchase."  *Orlander*, 802 F.3d at 302.  Under this theory, however, the Restaurant must do more than "merely allege that [it] paid a premium price for the[] product."  *Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 59 (S.D.N.Y. 2019) (cleaned up); *see also Borenkoff*, 2018 WL 502680, at *4 (invocation of the word "premium" was nothing more than a "legal conclusion couched as a factual allegation," as plaintiff failed to allege *how* the deceptive practice affected the objective economic value of the food items she received).  The Restaurant must allege that there is a "connection between the misrepresentation and any harm from, or failure of, the product," *Duran*, 450 F. Supp. 3d at 350, such as that it is "worse off" because the product "had significantly less value than it warranted," *McNulty v. Polar Corp.*, 2020 WL 5658667, at *5 (S.D.N.Y. Sept. 23, 2020), or that "use of the product adversely affected plaintiff's health," *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 677 (S.D.N.Y. 2012).

The Amended Complaint still fails to connect any premium price that the Restaurant purportedly paid to any "harm from, or failure of, the product."  *See Duran*, 450 F. Supp. 3d at 350.  The Restaurant does not allege, for example, that the salmon was inedible or that it harmed the Restaurant—or any of the customers to whom it presumably served the salmon—in some way.  And the Restaurant's repeated refrain that it "paid more for the Products than [it] otherwise would have paid" is both too generic and wholly conclusory.  FAC ¶ 7; *see also id.* ¶¶ 12, 14, 17, 106, 112, 121.  As set forth above, *see supra* § I.C, the Restaurant's own practices also refute this conclusory allegation because the Restaurant did exactly what it now says it was unwilling to do.

The Restaurant offers only two factual allegations in supposed support of its price-premium theory.  The first is a 2011 article that, according to the Restaurant, shows that consumers pay "as much as [a] 14.2% [premium] for eco-labeled foods."  *Id.* ¶ 6.  But that study concerned a *different* representation (products labeled "Marine Stewardship Council (MSC)-certified") regarding a *different* product ("frozen processed Alaska pollock products") marketed to *different* consumers in a *different* country (London metropolitan area in the U.K. market)—not a restaurant in New York.  *See* Roheim et al., *supra*, at 655.[11]  The second is an allegation that "[i]n 2015, sales of natural products grew 9.5% to $180 billion."  FAC ¶ 10.  This says even less about any premium that the Restaurant supposedly paid for the "all natural" statement.  The total *sales* for *all* natural products say nothing about the *price* of *those* products, let alone the price for *Ducktrap* products.  Because the Amended Complaint lacks any non-conclusory allegation plausibly showing that the Restaurant paid a premium for Ducktrap products because of the "sustainably sourced" or "all natural" statements, it fails to allege an injury cognizable under GBL §§ 349 and 350.

---

[11] *See* Simonsen Decl., Ex. A.

IV.     **THE RESTAURANT FAILS TO STATE ANY WARRANTY CLAIM.**

The Restaurant next asserts three breach-of-warranty claims.  These claims fail for two independent reasons beyond the defects discussed in Section I:  The Restaurant fails to allege the existence or breach of any warranty, and the Restaurant was not in privity with Defendants.

A.     **The Restaurant Has Not Identified Any Warranty That Was Breached.**

To state a claim for breach of express warranty, the Restaurant needed to allege that (1) Ducktrap made a material statement amounting to a warranty; (2) the Restaurant relied on this warranty "as a basis" for purchasing Ducktrap's products; (3) Ducktrap breached this warranty; and (4) the breach injured the Restaurant.  *Lugones*, 440 F. Supp. 3d at 244.

The Amended Complaint fails to even allege what warranty or warranties the Defendants allegedly made and then breached.  "It is basic law that [a] [p]laintiff[] [is] required to 'set forth the terms of the warranty upon which [it] relied.'"  *E. Materials Corp. v. Mitsubishi Plastics Composites Am., Inc.*, 2017 WL 4162309, at *8 (E.D.N.Y. Sept. 19, 2017) (citation omitted).  Yet the cause of action section of the Amended Complaint merely alleges in generic fashion that "[t]he terms of the contract included the promises and affirmations of fact made by Defendants on the Products' packaging and through marketing and advertising, as described above."  FAC ¶ 127.

Assuming this generic cross-reference is an attempt to "set forth the terms of the warranty" by referencing the Sustainably Sourced and Natural Representations, that effort fails.  To the extent the Restaurant claims that those Representations "warranted" that Ducktrap products have no adverse environmental impact and that the salmon they contain was raised without the use of antibiotics or chemicals, *see* FAC ¶¶ 32, 34–35, 66, neither of those promises appear on Ducktrap's packaging, *see supra* § I.B.  Because neither Representation actually "warranted" the promises that the Restaurant apparently now envisions, "there is no basis to claim a breach of any express warranty."  *Kennedy v. Mondelez Global LLC*, 2020 WL 4006197, at *13–15 (E.D.N.Y. July 10,

2020) (dismissing express-warranty claim because statements on Nabisco and Honey Maid packages that marketed "graham" crackers "made with real honey" did not "warrant [either] that more whole grains than white flour are in the crackers" or that "honey is the predominant sweetener," as plaintiff claimed); *see also Brumfield v. Trader Joe's Co.*, 2018 WL 4168956, at *2–3 (S.D.N.Y. Aug. 30, 2018) (dismissing express-warranty claim because the statement that an olive oil is "Black Truffle Flavored" did not suggest, as plaintiffs claimed, that "the product is derived from natural truffles"); *Axon*, 354 F. Supp. 3d at 184–85 (dismissing express-warranty claim because "a reasonable consumer would not interpret the 'Florida's Natural' brand name as warranting that the products are free from trace amounts of glyphosate'").

The Restaurant's common-law warranty claim suffers from the same problem.  To the extent this claim arises from the statements on the Ducktrap labels, *see* FAC ¶¶ 143, 146, it is "duplicative of [the Restaurant's] breach of express warranty claim" and "thus subject to dismissal on the same grounds," *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016); *see also McNulty*, 2020 WL 5658667, at *5 n.1 ("[A] New York common law breach of warranty claim is a breach of express warranty claim").  If the Restaurant is trying to "assert[] a different kind of common law warranty claim," *McNulty*, 2020 WL 5658667, at *5 n.1, one not "subsumed in or duplicative of" its express-warranty claim, *Catalano*, 167 F. Supp. 3d at 556, it has "not adequately pleaded" that claim, *McNulty*, 2020 WL 5658667, at *5 n.1.  It has not, for instance, "allege[d] the existence of an actual contract" needed to trigger this species of claim. *Catalano*, 167 F. Supp. 3d at 556.

The Restaurant similarly fails to state any implied-warranty claim.  The Restaurant briefly alleges that Ducktrap's products are neither fit for their ordinary use nor of merchantable quality. FAC ¶¶ 158–62.  But Ducktrap's salmon is perfectly fit to eat, and the Restaurant never alleges

otherwise.  *See Niles v. Beverage Mktg. USA, Inc.*, 2020 WL 4587753, at *7 (E.D.N.Y. Apr. 16, 2020) (implied warranties of fitness and merchantability promise only that the food will be fit for human consumption and of minimum quality).  Instead, the Restaurant tacks on a claim that Ducktrap's products "did not conform to the promises or affirmations of fact made on the label [*sic*]."  FAC ¶¶ 160, 162.  But this just recycles the Restaurant's express-warranty claim and so fails for the same reasons.  *See Hesse*, 463 F. Supp. 3d at 470 ("[W]hen an 'implied warranty of merchantability cause of action is based solely on whether the product in dispute conforms to the promises or affirmations of fact on the packaging of the product, [that] claim rises and falls with express warranty claims brought for the same product.'" (citation omitted)).

### B.   The Restaurant's Implied-Warranty Claim Also Fails for Lack of Privity.

To maintain a breach-of-implied-warranty claim under New York law, a plaintiff must allege either that it was in privity with the manufacturer or that it suffered a personal injury. *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015).  As a result, a purchaser cannot recover purely economic losses from a remote manufacturer under a theory of implied warranty.  *Westchester Cty. v. Gen. Motors Corp.*, 555 F. Supp. 290, 294 (S.D.N.Y. 1983).

The Restaurant pleads neither.  The Restaurant was not in privity with Defendants—it allegedly purchased Ducktrap products only from two third-party distributors, *see* FAC ¶ 78—and the Restaurant's only alleged injuries are financial, *see id.* ¶¶ 130, 132, 146, 148, 163, 167.  The implied-warranty claim thus fails as a matter of law.  *See, e.g.*, *Jesmer v. Retail Magic, Inc.*, 863 N.Y.S.2d 737, 747 (App. Div. 2008) (affirming dismissal of implied-warranty claim because plaintiff alleged "economic loss" but was "not in privity" with defendant); *Mahoney v. Endo Health Sols., Inc.*, 2016 WL 3951185, at *5 (S.D.N.Y. July 20, 2016) (same).

The Amended Complaint's new allegation that Ducktrap products were sold "through authorized sellers" that acted as "Defendants' agents" does not alter this analysis.  FAC ¶¶ 131,

147, 166.  The Amended Complaint lacks a single factual allegation that Sysco and Ginsberg's Foods acted as an "agent" of any Defendant.  *See, e.g.*, *Shcherb v. Angi Homeservices Inc.*, 2020 WL 2571041, at *2 (S.D.N.Y. May 21, 2020) ("conclusory allegations" that one entity "acted as [another's] agent" are "patently insufficient to state a claim that there is an agency relationship"). "Because Plaintiff has not pled any facts plausibly suggesting that the third-party dealer[s] [were] in fact [any] Defendant's agent, the third-party dealer[s'] relationship[s] with Defendant[s] do[] not provide a basis for finding privity between [the Restaurant] and Defendant[s]." *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 310 (N.D.N.Y. 2019).

## V.   THE RESTAURANT'S UNJUST-ENRICHMENT CLAIM IS DUPLICATIVE.

The Restaurant's unjust-enrichment claim not only exhibits the same defects as the Restaurant's other claims, *see supra* § I, it also improperly duplicates those claims.  "[U]njust enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).  It is an equitable claim "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff"; for example, where a "defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018) (citation and marks omitted).  As a result, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello*, 18 N.Y.3d at 790.

This rule independently bars the Restaurant's unjust-enrichment claim.  The Restaurant bases that claim "on the same factual allegations and the same theory of liability" as its fraud, GBL, and warranty claims, *Hesse*, 463 F. Supp. 3d at 474—namely, that it purchased Ducktrap products because of misleading statements about its salmon.  *See* FAC ¶¶ 177–83 (Count VIII). Because this claim duplicates the Restaurant's other flawed causes of action, it "will not survive a

motion to dismiss." *Hesse*, 463 F. Supp. 3d at 473–74 (citation omitted).  Dismissal of the Restaurant's unjust-enrichment claim is proper even though the other claims that it duplicates are also defective, "because where a plaintiff's 'other claims are defective, an unjust enrichment claim cannot remedy the defects.'"  *Pirri v. Cheek*, 2019 WL 2472438, at \*5 (S.D.N.Y. June 13, 2019) (Engelmayer, J.) (citation omitted); *see also In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 500 (S.D.N.Y. 2017) (Engelmayer, J.) ("[W]ithout a viable underlying claim of illegality, an unjust enrichment claim must be dismissed." (marks omitted)).

## VI.   THE RESTAURANT LACKS STANDING TO PURSUE INJUNCTIVE RELIEF.

Separate from the merits, the Restaurant lacks Article III standing to pursue injunctive relief because it does not face a "real or immediate threat" of future injury.  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).  "Neither allegations of *possible* future injury, nor past exposure to illegal conduct is sufficient to clear the standing bar for injunctive relief."  *Duran*, 450 F. Supp. 3d at 355–56 (marks omitted).  This rule applies equally to class actions:  "[a] plaintiff seeking to represent a class must personally have standing."  *Nicosia*, 834 F.3d at 239.[12]

As the Second Circuit recently held, "past purchasers of a product . . . are not likely to encounter future harm of the kind that makes injunctive relief appropriate."  *Berni*, 964 F.3d at 147; *see also Nicosia*, 834 F.3d at 239 (plaintiff lacked standing to pursue an injunction because he failed to allege that he intended to buy similar products from the defendant in the future).  They are not forced to repurchase the same product, and they are unlikely to be deceived if they do so. *See Berni*, 964 F.3d at 147–48; *see also Hesse*, 463 F. Supp. 3d at 465 ("[B]ecause a plaintiff in a

---

[12] Confusingly, the Restaurant still seeks to enjoin Defendants from falsely advertising the "health or medicinal benefits" of Ducktrap products, FAC ¶ 95, even though neither of the statements it challenges concern the "health or medicinal benefits" of Ducktrap's smoked salmon.

false advertisement case has necessarily become aware of the alleged misrepresentations, there is no danger that they will again be deceived by them." (marks omitted)).

The Amended Complaint conveys that the Restaurant does not intend to purchase Ducktrap products again in the future, now that it supposedly knows their "true nature." *See* FAC ¶ 130. The Restaurant concedes that it does not intend to purchase Ducktrap products again unless "the misleading labeling is corrected or the manner in which the Products are manufactured and sourced is changed." *Id.* ¶ 20.  Such "conditional promises to purchase [a] product if [the] product is altered are insufficient to allege future injury." *Lugones*, 440 F. Supp. 3d at 238–39; *see also Duran*, 450 F. Supp. 3d at 356 ("Alleging that one would purchase a product if re-engineered or re-marketed does not show a real or immediate threat of future injury."); *Kennedy*, 2020 WL 4006197, at *5 (allegation that plaintiff "*would* consider purchasing the Products again *if* there were assurances that the Products' representations were no longer misleading" was insufficient for standing).

Additionally, even if the Restaurant were to purchase Ducktrap products again in the future, there is no danger that it could again be "deceived" by the "sustainably sourced" or "all natural" statements. *See Hesse*, 463 F. Supp. 3d at 465.  Because the Restaurant is not likely to suffer any future harm arising from the statements on Ducktrap's labels, it lacks Article III standing to pursue injunctive relief, either individually or on behalf of a class.  *See, e.g.*, *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 460 (S.D.N.Y. 2020) (plaintiff lacked standing to pursue injunctive relief where complaint suggested he would not purchase the product again knowing its composition).

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court dismiss all claims in the First Amended Class Action Complaint with prejudice.

Dated:   February 1, 2021                Respectfully submitted,
          Washington, DC

                                           COVINGTON & BURLING LLP

                        By:    /s/ Andrew Soukup

                                           Andrew Soukup (*pro hac vice*)
                                           Jordan L. Moran (Bar No. 5437702)
                                           Alyssa Vallar (*pro hac vice*)
                                           One CityCenter
                                           850 Tenth Street, NW
                                           Washington, DC 20001
                                           asoukup@cov.com
                                           jmoran@cov.com
                                           avallar@cov.com
                                           Tel:  (202) 662-6000

                                           Ashley M. Simonsen (*pro hac vice*)
                                           1999 Avenue of the Stars
                                           Los Angeles, CA 90067
                                           asimonsen@cov.com
                                           Tel:  (424) 332-4800

                                           *Counsel for Defendants*