UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

NEVERSINK GENERAL STORE and BRENDA
TOMLINSON, *individually and on behalf of all
others similarly situated*,

                                      Plaintiffs,

-v-

MOWI USA, LLC, MOWI DUCKTRAP, LLC,
MOWI USA HOLDING, LLC, and MOWI ASA,

                                        Defendants.

20 Civ. 9293 (PAE)

OPINION &
ORDER

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

      This case is a putative consumer class action alleging that defendants Mowi USA, LLC, Mowi Ducktrap, LLC, Mowi USA Holding, LLC, and Mowi ASA (together, "Mowi")—which comprise one of the world's largest seafood companies—misrepresented that certain smoked Atlantic salmon products they sell are "sustainably sourced," "all natural," and sourced from Maine. Since filing, plaintiffs Neversink General Store ("Neversink") and Brenda Tomlinson have reached a nationwide class settlement agreement with Mowi and moved for preliminary approval of their settlement. *See* Dkts. 37, 66–67. By separate order today, the Court is granting that motion. After the parties notified the Court of their settlement but before they moved for preliminary approval, intervenors Abigail Starr and Lauren Snider ("Intervenors") appeared. *See* Dkts. 61–63. Intervenors are plaintiffs in a separate, later-filed class action against Mowi bringing largely identical claims, which is pending in the District of Maine. They have moved to intervene because the existing plaintiffs allegedly do not adequately protect Intervenors' interests. For the following reasons, the Court denies their request.

## I. Background[1]

There are currently three relevant actions, including this one, pending against Mowi, each of which brings largely identical claims. Intervenors are plaintiffs in one (the "Maine Action"). Intervenors' attorneys are counsel in both the Maine Action and an earlier-filed action, brought on behalf of a consumer-advocacy organization, Organic Consumers Association ("OCA") (the "DC Action"). The DC Action was filed first, this action second, and the Maine Action third. The Court briefly describes each case as relevant to the pending motion.

### A. The DC Action

On July 30, 2020—three months before this action was filed—counsel for Intervenors filed a case against Mowi in Washington, DC superior court on behalf of OCA. *See* Simonson Decl., Ex. A ("OCA Compl."); Int. Mem. at 1. Like plaintiffs here, OCA alleged that Mowi misrepresented that its smoked Atlantic salmon products were sustainably sourced, all natural, and from Maine. The complaint in the DC action, however, was not a class action and sought only injunctive relief, not damages. *See* OCA Compl. ¶¶ 17 ("This is not a class action[.]"), 18 ("This action does not seek damages."). Mowi has moved to dismiss the DC action; that motion is pending. *See Organic Consumers Ass'n v. Mowi ASA*, No. 20 CA 3368(B) (D.C. Sup. Ct. filed July 30, 2020).

---

[1] The Court draws its account of the facts from the parties' submissions on the pending motion to intervene, including Intervenors' memorandum of law in support of their motion, Dkt. 62 ("Int. Mem."); the declaration of Kim E. Richman, Esq., in support of the Intervenors' motion, Dkt. 63 ("Richman Decl."), and attached exhibits; plaintiffs' opposition to Intervenors' motion, Dkt. 50 ("Pl. Mem."); Mowi's opposition to Intervenors' motion, Dkt. 56 ("Mowi Mem."); the declaration of Ashley Simonson, Esq., in opposition to the motion to intervene, Dkt. 57 ("Simonsen Decl."), and attached exhibits; the declaration of Gary M. Klinger in opposition to the motion to intervene, Dkt. 50-1 ("Klinger Decl."); and the declaration of Diane M. Welsh, Esq., in opposition to the motion to intervene, Dkt. 58 ("Welsh Decl.").

### B. This Action

On November 5, 2020, Neversink commenced this action on behalf of a putative class, alleging that Mowi falsely claimed that its smoked salmon products were sustainable, all natural, and sourced from Maine. Dkt. 1. Intervenors describe this case as a "copycat" of the DC Action, noting that many allegations here appear to have been copied and pasted *in haec verba* from the complaint in the DC Action. *See* Int. Mem. at 1–2; *see also* Dkt. 29 at 1–2 & n.1 (Mowi noting the same in its motion to dismiss).

On December 22, 2020, Mowi moved to dismiss Neversink's claims. Dkts. 18–20. On January 12, 2021, Neversink filed an amended complaint. Dkt. 24 ("FAC"). On January 18, 2021, plaintiffs' counsel wrote Mowi to notify it that Tomlinson also intended to pursue a class action bringing similar claims. Klinger Decl. ¶ 2. The next day, Mowi told plaintiffs' counsel that it was interested in exploring a possible settlement. *Id.* ¶ 3. On February 1, 2021, Mowi moved to dismiss the FAC. Dkts. 28–31.

Meanwhile, settlement negotiations moved forward. On February 8, 2021, plaintiffs and Mowi held a successful mediation before a privately retained mediator, former United States Magistrate Judge Hon. Diane Welsh. *See* Klinger Decl. ¶ 4; Welsh Decl. On February 10, 2021, Neversink filed a notice of settlement. Dkt. 37. On February 23, 2021, Neversink moved for leave to file a second amended complaint, which would "conform[] to the agreement reached in principle by the Parties" by adding Tomlinson as a plaintiff, Mowi ASA as a defendant, and allegations about Mowi's Maine representations. Dkt. 40 at 1–3. On March 15, 2021, plaintiffs filed the second amended complaint. Dkt. 45 ("SAC"). The SAC brought claims on behalf of a nationwide class and a New York subclass. *Id.* ¶ 100. On March 16, 2021, plaintiffs filed an unopposed motion for preliminary approval of the parties' settlement. Dkt. 49. That motion sought certification only of a nationwide class, not the New York subclass. *Id.* at 4.

On April 28, 2021, the Court issued an order expressing doubt that it would be able to certify the proposed injunctive class under Rule 23(b)(2), given the recent decision in *Berni v. Barilla S.p.A.*, 964 F.3d 141, 149 (2d Cir. 2020) ("[P]ast purchasers of a product . . . are not eligible for class certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure."); *id.* (vacating final approval of class settlement). The Court therefore directed the parties to file either (1) a letter explaining the basis on which the Court could certify an injunctive class under Rule 23(b)(2) consistent with *Berni*; or (2) a revised proposed settlement excluding injunctive relief and instead proceeding only under Rule 23(b)(3). Dkt. 65. On May 5, 2021, plaintiffs filed an amended motion for preliminary approval of the class settlement, now contemplating certification of a nationwide damages class only under Rule 23(b)(3), and excluding any class-wide injunctive relief in the proposed settlement agreement. Dkts. 67–68. The amount of the monetary relief is unchanged from the original proposed settlement.

### C. The Maine Action

On December 31, 2020, Starr—represented by the same counsel who represent OCA in the DC Action—filed a class-action complaint in the District of Maine on behalf of a putative nationwide class of purchasers and a New York subclass. *See Starr v. Mowi ASA*, No. 20 Civ. 488 (LEW), Dkt. 1 (D. Me. filed Dec. 31, 2020). On February 26, 2021, Starr amended the complaint to add Snider as a named plaintiff. *Id.*, Dkt. 20. The amended complaint in the Maine Action, like those in the other two actions, alleges that Mowi falsely claimed that its smoked Atlantic salmon products were sustainably sourced, all natural, and from Maine. *Id.* Mowi has moved to dismiss or stay the Maine Action under the first-filed rule; that motion remains pending. *Id.*, Dkt. 21.

### D. The Motion to Intervene

On March 8, 2021—after the parties here had filed their notice of settlement but before they had moved for preliminary approval (and therefore before the settlement's terms became public)—Intervenors moved to intervene. *See* Int. Mem. They argue that the copycat nature of the allegations here, coupled with plaintiffs' hasty settlement with Mowi gives rise to an inference that the settlement may have been collusive. *Id.* at 8–10. And because Intervenors are absent members of the proposed class, they argue that any class settlement would risk binding them to such an unsatisfactory resolution. *Id.* at 7–8. On March 16, 2021, plaintiffs and Mowi (together, the "parties") each filed oppositions to the motion to intervene. *See* Pl. Mem.; Mowi Mem. They argue that the terms of the settlement agreement, and the process through which the parties reached it, show Intervenors' concerns to be unfounded—especially considering prior, comparable settlement demands made by Intervenors' counsel similarly early on in the DC and Maine Actions. In any event, the parties argue, intervention is improper.

## II. Applicable Legal Standards

A party seeking to intervene may do so either as of right or permissively. *See* Fed. R. Civ. P. 24(a)(2), (b)(1). As to the former, a court must permit a person to intervene as of right when all four of the following conditions are met:

> (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties.

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006). "Failure to satisfy *any one* of these requirements is a sufficient ground to deny the application." *Farmland Dairies v. Commissioner of N.Y. State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1043 (2d Cir. 1988).

"A district court may grant a motion for permissive intervention if the application is timely and if the 'applicant's claim or defense and the main action have a question of law or fact in common.'" *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 202 (2d Cir. 2000) (quoting Fed. R. Civ. P. 24(b)(2)). "The court must consider whether granting permissive intervention 'will unduly delay or prejudice the adjudication of the rights' of the existing parties." *Id.* (quoting Fed. R. Civ. P. 24(b)(2)). Whether to grant permissive intervention is within "the broad discretion of the district court." *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005); *see United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 990 n.19 (2d Cir. 1984) ("[A] denial of permissive intervention has virtually never been reversed.").

## III. Discussion

### A. Intervention as of Right

Even assuming that Intervenors' motion is timely[2] and that they have a legally protected interest in this case,[3] they have no right to intervene because they have not shown that this action

---

[2] Plaintiffs, but not Mowi, argue that Intervenors' motion is untimely. They argue not that the motion is too late, but that it is "premature" given that the Court has not yet certified a class. Pl. Mem. at 9–10. But the cases plaintiffs cite for this proposition generally held that the timing of class certification bore on whether intervenors had a legally protected interest in the action, not whether their motion was "timely." *See, e.g.*, *Calderon v. Clearview AI, Inc.*, No. 20 Civ. 1296 (CM), 2020 WL 2792979, at *5 (S.D.N.Y. May 29, 2020) ("But at the moment, no class has been certified anywhere, so Mutnick has no right to control the litigation and disposition of any claim other than his own."). In any event, unlike those cases, the certification of the proposed class here is not "speculative." *Id.* The parties' motion for preliminary approval of the class settlement seeks certification of a proposed nationwide settlement class, and the Court, by separate order today, grants that motion. Thus, Intervenors' motion, filed about four months after Neversink commenced this action and within weeks of the proposed class settlement, is not untimely.

[3] Citing *Calderon*, Mowi briefly argues that Intervenors lack such an interest because, "at the moment, no class has been certified anywhere." Mowi Mem. at 9. As noted, however, a motion for preliminary approval of the class settlement—which includes a request for conditional class certification—has been pending and is being granted today. Class certification here, therefore, is not nearly as speculative as it was in *Calderon* and the cases on which it relied. *See Calderon*,

may impair their interests or that the existing plaintiffs will fail to adequately represent them. Thus, the Court denies their motion to intervene under Rule 24(a).

First, Intervenors have failed to show that this action may impair or impede their interests absent intervention. For an interest to be cognizable by Rule 24(a)(2), it must be "direct, substantial, and legally protectable." *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (quoting *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)).

Intervenors' only proffer on this point is that they "are putative class members," "clearly possess an interest related to the instant action," and that, "absent intervention, [their] ability to protect their interests will be impaired." Int. Mem. at 7–8 (citing out-of-Circuit authority). Courts in this Circuit, however, have routinely held that a party's status as an absent class member, standing alone, does not meet Rule 24(a)'s impairment requirement. *See, e.g.*, *Calderon*, 2020 WL 2792979, at *6 (An intervenor "is perfectly free to opt out and pursue his claim on his own in the court of his choice. Therefore, intervention is not needed for him to protect his interest in the 'property or transaction that is the subject matter of' his own lawsuit[.]"); *Rudolph v. Hudsons Bay Co.*, No. 18 Civ. 8472 (PKC), 2019 WL 1416986, at *3 (S.D.N.Y. Mar. 29, 2019) ("With regard to intervention as of right, the right to opt out of a class or object to a settlement means that the proposed intervenors will have the ability to protect their interests without intervention."); *In re Platinum & Palladium Commodities Litig.*, No. 10 Civ. 3617 (WHP), 2014 WL 3500655, at *7 (S.D.N.Y. July 15, 2014) (motion to intervene "unnecessary because '[c]lass members need not formally intervene in order to raise their

---

2020 WL 2792979, at *5. Thus, the nonexistence of a certified class at the precise moment of Intervenors' motion does not independently require denial of that motion.

objections to a proposed settlement'" (quoting *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 491 (S.D.N.Y. 1998))); *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MD 2058 (PKC), 2012 WL 1674299, at *3 (S.D.N.Y. May 14, 2012) (denying intervention as of right under third factor where proposed intervenors could not explain why rights to object to class settlement were insufficient to protect their rights); *see also Travis v. Navient Corp.*, 284 F. Supp. 3d 335, 344–45 (E.D.N.Y. 2018) (finding no risk of impairment where intervenors claimed that "without intervention, their interests might be impaired by conflicting rulings in this action or a potential 'reverse auction' settlement," given Rule 23 protections) (collecting cases).[4]

Although at times intervention by absent class members is warranted, typically the safeguards provided by Rule 23 will—and indeed are specifically designed to—guard against the impairment of class members' interests. That is because class certification requires a judicial determination that the named plaintiff(s) and class counsel will adequately represent the class, Fed. R. Civ. P. 23(a)(4), (e)(1)(B)(i); final approval of any class settlement requires a judicial determination that the settlement is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2) (directing courts to consider, *inter alia*, whether the settlement "was negotiated at arm's length" and whether "the relief provided to the class is adequate"); absent class members maintain the right to opt out of a class action and to pursue their individual claims, Fed. R. Civ. P. 23(c)(2)(B)(v), (e)(4); and any class member may object to a proposed class settlement, Fed. R. Civ.

---

[4] Courts outside this Circuit have often held the same. *See, e.g.*, *Hayes v. Umpqua Bank*, No. 20 Civ. 684 (AC), 2020 WL 8611117, at *4 (D. Or. Aug. 4, 2020) (collecting cases holding that Rule 23 adequately protects interests of absent class members), *report and recommendation adopted*, 2021 WL 640900 (D. Or. Feb. 18, 2021); *Doe v. Cin-Lan, Inc.*, No. 08 Civ. 12719, 2011 WL 37970, at *2–3 (E.D. Mich. Jan. 5, 2011) (collecting cases); *Waudby v. Verizon Wireless Servs., LLC*, 248 F.R.D. 173, 175 (D.N.J. 2008); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 363, 367 (D.D.C. 2001).

P. 23(e)(5)(A). *See Travis*, 284 F. Supp. 3d at 344–45 (explaining why mere membership in a class proposed for settlement does not generally impair parties' interest and collecting cases holding the same); *Athale v. Sinotech Energy Ltd.*, No. 11 Civ. 05831 (AJN), 2013 WL 2145588, at *2 (S.D.N.Y. May 16, 2013) (denying intervention where intervenor "does not distinguish or adequately explain why intervention is appropriate in lieu of exercising his rights to either opt out of the settlement or to object and be heard at the fairness hearing"); *cf. Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 551 (1974) (noting that encouraging motions to intervene in class actions would "frustrate the principal function of a class suit" by occasioning "precisely the multiplicity of activity which Rule 23 was designed to avoid"). Even without intervention, this suite of rights and protections remains available to Intervenors, who may choose to opt out of any settlement and pursue their own lawsuit unimpeded. Of course, Intervenors may lose out on the opportunity to serve as lead plaintiffs in a damages class action alleging the same harms— and their counsel may therefore be unable to reap the pecuniary benefit of their investigation into Mowi's allegedly misleading practices. But those interests are not ones that Rule 24(a) protects. *See, e.g.*, *In re Toyota Hybrid Brake Litig.*, No. 20 Civ. 127, 2020 WL 6161495, at *15 (E.D. Tex. Oct. 21, 2020) (holding such interest incompatible with Rule 24(a)'s "substantive conception of an interest"); *Calderon*, 2020 WL 2792979, at *4, *6; *Travis*, 284 F. Supp. 3d at 343. Intervenors thus have not shown that, absent intervention, this case may impair any interest of theirs that is "direct, substantial, and legally protectable."

The cases Intervenors cite are not to the contrary. In two, the Court granted permissive, not mandatory, intervention, without ruling on the former. *See Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950 (AT) (JCF), 2015 WL 4619663, at *4 (S.D.N.Y. Aug. 3, 2015) ("I need not decide whether the interests of absent class members are sufficiently at risk to compel

9

intervention as of right[.]"), *aff'd*, 2016 WL 11645644 (S.D.N.Y. June 6, 2016);[5] *Int'l Design Concepts, LLC v. Saks Inc.*, 486 F. Supp. 2d 229, 234 (S.D.N.Y. 2007) (holding, outside the class-action context, that the court "need not determine whether intervention as of right under Rule 24(a) is warranted"). In another, the Court found that absent class members' interests were at risk because the named plaintiff had died. *See Diduck v. Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55, 58 (S.D.N.Y. 1993) (holding that Rule 23 permits intervention in some cases and finding that intervenors' interest "can certainly not be protected by the deceased Mr. Diduck"). None, however, held that intervenors' interests risked impairment simply because they were absent class members.

Independently, Intervenors have also not shown that the existing plaintiffs fail to adequately represent their interests. Intervenors' arguments on this point fall into two categories. First, they claim that existing plaintiffs' counsel may have colluded with Mowi to give Mowi the benefit of a "reverse auction" settlement,[6] citing plaintiffs' allegedly "copycat" complaint and the lack of discovery completed before settlement. *See* Int. Mem. at 8–10. Second, they note certain weaknesses that purportedly limit existing plaintiffs' bargaining power. Those include that Tomlinson is from Oklahoma—casting doubt on her ability to represent a nationwide class against Mowi, which is not subject to general jurisdiction in New York—and that Intervenors are superior candidates to represent New York and California consumers. *See id.* at 8, 10–13.

---

[5] And, as explained below, *Chen-Oster*'s permissive-intervention ruling does not apply here because there, intervention did not threaten to "upset settlements among the original parties." *Chen-Oster*, 2015 WL 4619663, at *11.

[6] That is, an agreement in which a defendant faced with multiple overlapping class actions negotiates the lowest possible settlement with the weakest available class plaintiff.

"[T]he burden to demonstrate inadequacy of representation is generally speaking 'minimal[.]'" Butler*, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).  But the Second Circuit has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." *Id.* (collecting cases).  "Where there is an identity of interest, as here, the movant to intervene must rebut the presumption of adequate representation by the party already in the action." *Id.* at 179–80.  The Circuit has not set forth an "exhaustive list" of what may suffice to overcome that presumption, but generally "evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy." *Id.* at 180; *see Nat. Res. Def. Council, Inc. v. N.Y. State Dep't of Env't Conservation*, 834 F.2d 60, 62 (2d Cir. 1987) ("So long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented.").  Here, both plaintiffs and Intervenors share the same interests: establishing that Mowi's representations that its smoked-salmon products are sustainable, all-natural, and Maine-sourced are misleading, and obtaining relief on behalf of themselves and a putative class as a remedy for Mowi's alleged wrongs.  Thus, Intervenors bear the burden of showing that the existing plaintiffs or their counsel are inadequate.

Intervenors have failed to carry that burden.  For the most part, they challenge plaintiffs' adequacy based on Intervenors' concerns about the process through which plaintiffs reached the pending settlement agreement with Mowi.  But those concerns are largely speculative or conclusory.  And, critically, many are refuted by the record.

First, Intervenors note generally that plaintiffs admit they worked "in consultation with Defendants" to craft the SAC in conformity with their agreement, and specifically that plaintiffs and Mowi may have added Tomlinson as a plaintiff strategically to moot the claims of consumers, like Intervenors, whom Neversink, as a business, may not have been able to represent. *See* Int. Mem. at 8. But the fact that plaintiffs here worked with Mowi to amend the contours of their claims shows only that they reached a negotiated resolution; it does not prove improper collusion or misfeasance in doing so. And, in certain respects, adding Tomlinson *strengthened* the complaint. As Intervenors argue, Neversink may have been poorly situated, on its own, to represent a class of individual purchasers. *See id.* ("Neversink General Store is a New York *business* whose interests necessarily diverge from those of individual consumers[.]").[7]

Second, Intervenors accuse plaintiffs' counsel of copying and pasting a substantial portion of their complaint from Intervenors' counsel's complaint in the DC Action, and that such conduct bespeaks a lack of adequacy. *Id.* at 8–9. In support, they cite filings by unhappy proposed intervenors in other, unrelated cases who accused plaintiffs' counsel of similar tactics. *Id.* at 9–10. But the sole case that Intervenors rely on for the notion that copycat filings provide a basis for finding inadequacy is far afield. There, the court (considering preliminary approval of a class settlement, not intervention) found "an unusually close and long-standing working relationship between" plaintiff and his counsel, extending to 36 other lawsuits, such that plaintiff "may well have felt some pressure to accept the proposed settlement"; that plaintiff's counsel had engaged an expert "convicted of mail and Medicare fraud" and whose medical license had been revoked in several states; and that the lead plaintiff likely gave false testimony in a

---

[7] That said, the class definition in the proposed settlement agreement includes "entities" that bought the products at issue during the class period, such that Neversink, but not Intervenors, may well be representative of such absent class members.

deposition. *See Aliano v. CVS Pharmacy, Inc.*, No. 16 Civ. 2624 (FB) (SMG), 2018 WL 3625336, at *3, *6–7 (E.D.N.Y. May 21, 2018). The *Aliano* court also noted that the existing plaintiff had drafted a "copycat" complaint and "rushed to reach a settlement." *Id.* at *6. But those facts were far from the impetus behind the decision to deny preliminary approval. By contrast, courts have often denied intervention in cases making similar allegations on sparser records of inadequacy. *See, e.g.*, *Rudolph*, 2019 WL 1416986, at *1 (finding representation adequate despite fact that intervenors "view [plaintiff's] action as a copycat action and suggest that the parties to the instant action are likely to try to settle the action to the detriment of the proposed intervenors"); *Allen v. Hyland's Inc.*, No. 12 Civ. 1150 (DMG), 2012 WL 12887827, at *2–3 (C.D. Cal. Aug. 28, 2012) (same despite intervenors' claim of copycat filings and suspicions of reverse auctioning).

Nor does Intervenors' citation to other litigants' accusations about plaintiffs' counsel in other cases prove that such behavior was improper in those cases—let alone imply litigation misconduct here. In fact, in one such recent case, the court *rejected* intervention premised on those accusations of inadequacy. *See T.K. ex rel. v. Bytedance Tech. Co.*, No. 19 Civ. 7915, 2021 WL 1172767, at *6 (N.D. Ill. Mar. 29, 2021) (intervenor's interests not impaired given Rule 23 protections and no lack of adequate representation because intervenor "makes no showing of collusion or nonfeasance on the part of any party to the suit").[8] Notably, Intervenors do not cite any cases in which plaintiffs' experienced counsel were held to be inadequate. *See* Pl. Mem. at 14–15 (listing successful class actions litigated by plaintiffs' counsel); Dkts. 67-1, Ex. 2 (same), 67-2 ¶¶ 7–10 (same), 67-2, Ex. 1 (firm resume listing additional cases).

---

[8] According to Intervenors here, the intervenor in *T.K.* had claimed that plaintiffs' "counsel's conduct in filing a complaint that they largely copied (and for which they provided no attribution) demonstrates a lack of integrity." Int. Mem. at 9.

13

Third, Intervenors fault the parties for failing to disclose the terms of their settlement agreement when recently asked, deeming such refusal suspicious. *See* Int. Mem. at 3. But the leap from such reluctance to share still-confidential settlement documents to a nefarious purpose or conflict of interest is implausible. *Cf. In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. at 368 ("Merely refusing to provide a document request does not by itself evidence a conflict of interest.").

Fourth, Intervenors argue that plaintiffs' failure to conduct substantial discovery or to oppose Mowi's motion to dismiss before agreeing to settle bespeaks a lack of "adequate knowledge or incentive to push for the best possible settlement" for the class of which Intervenors are a part. *See* Int. Mem. at 9–10. That criticism is difficult to credit—and cynical—insofar as Intervenors attempted to do the same thing upon filing the Maine Action. *See* Simonson Decl., Exs. D at 2 (October 19, 2020 demand letter seeking to settle Starr's claim in the Maine Action on a class-wide basis before filing the complaint), L at 1 (February 4, 2021 demand letter seeking to settle both Intervenors' claims on a class-wide basis after Mowi had moved to dismiss their complaint but before Intervenors had responded to or taken any discovery). Intervenors' concern that plaintiffs failed to "push for the best possible settlement" is similarly undermined by the content of their own pre-filing and pre-discovery settlement demands. In their two demand letters, Intervenors' opening offers for monetary relief were between 1% and 5% of Mowi's relevant product sales, out of which class costs and attorneys' fees would have been deducted. *See id.*, Exs. D at 2, L at 1.[9] Mowi has represented that such figures, if agreed to, would have produced a total settlement of between $440,000 and $2.2 million. Mowi Mem. at 12; Welsh

---

[9] The parties represent, and their mediator confirms, that plaintiffs were unaware of this offer before they reached a settlement in principle. *See* Klinger Decl. ¶¶ 11–12; Welsh Decl. ¶ 6.

14

Decl. ¶ 5. And here, Mowi has agreed to pay up to $1.3 million in payments to class members and costs, and up to $360,000 more in fees, for a total settlement amount of up to $1.66 million. *See* Klinger Decl. ¶¶ 9–10. In other words, plaintiffs have secured class-wide relief on the higher end of the range proposed by Intervenors in their *opening bids* to Mowi. Intervenors' speculation that they might secure fuller or more durable relief for the class were their motion to intervene granted thus appears rosy and, at best, speculative.[10]

Even had Intervenors not undermined their criticisms by seeking to settle their own class action on a record similarly sparse to the one here, the fact that plaintiffs opted to seek—and obtained—early settlement does not suggest inadequacy of representation. As then-district judge Lynch has explained,

> Intervenors, while objecting to the amount of discovery that took place before settlement, have not explained how additional discovery would have been in the interest of the class. Discovery has costs, and further discovery would have taken additional time and resulted in the expenditure of additional funds on both sides, neither of which is in the plaintiffs' interest. On the benefit side, it is difficult to see what new information beneficial to the class would have been obtained through a prolonged discovery process.

*McBean v. City of New York*, 233 F.R.D. 377, 385 (S.D.N.Y. 2006); *see In re Bank of Am. Corp.*, 2012 WL 1674299, at *1–2 (rejecting intervention where intervenors complained that plaintiffs "ha[d] not conducted meaningful discovery"). So too here. And if Intervenors believe that the

---

[10] This result also undermines Intervenors' predictions that, given certain defenses that may apply to plaintiffs but not Intervenors, plaintiffs would "be tempted to accept less favorable settlement terms" in exchange for a waiver of those defenses. Int. Mem. at 10–12. Those potential—but, given the settlement, apparently waived—defenses thus also do not favor intervention. The same is true of Intervenors' speculation that plaintiffs and Mowi may have engaged in a reverse auction. Not only has the parties' mediator confirmed that negotiations here were arm's length and hard fought, Welsh Decl. ¶ 7; the resulting settlement likely matched or exceeded the amounts originally sought by the undisputedly arm's-length Intervenors.

15

settlement reached is inadequate,[11] they are free to pursue any objections in the settlement-approval process or to pursue their own cases. *See Travis*, 284 F. Supp. 3d at 345 (collecting cases); *In re Bank of Am. Corp.*, 2012 WL 1674299, at *2 ("[S]uch arguments are best raised in the settlement approval process governed by Rule 23[.]"); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 70 (S.D.N.Y. 2003) ("Where class members' differences of opinion with class counsel on a negotiated settlement can be adequately addressed through the Court's consideration of the objections, intervention is unnecessary and unwarranted."); *In re NASDAQ*, 187 F.R.D. at 491 (same).

Accordingly, the Court denies Intervenors' motion to intervene as of right under Rule 24(a). That said, while the Court does not view either plaintiffs' apparent reliance on an investigation by Intervenors' counsel or plaintiffs' early settlement of this action as requiring intervention, those facts may prove relevant to the fee award warranted here should the Court ultimately approve settlement. Under Circuit precedent, the Court's fee award will be guided by "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (quoting *Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)); *see McDaniel v. County of Schenectady*, 595 F.3d 411, 424 (2d Cir. 2010); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 434 (S.D.N.Y. 2016) (distinguishing cases in which "class actions are filed on the heels of [another's] investigation" from those where claims "were formulated entirely from the findings of [an independent]

---

[11] Because they moved to intervene before the parties sought preliminary settlement approval, Intervenors' motion does not discuss the actual terms of the agreement reached.

investigation" for purposes of fee award); *see also* Dkt. 49-1, Ex. 1 ("Settlement Agreement") ¶ 3.4 (authorizing plaintiffs' counsel to "file a motion with the Court requesting an award of attorneys' fees and costs not to exceed" $360,000, noting that counsel's entitlement to such fees "will be determined by the Court," and specifying that the settlement "shall not be conditioned on Court approval" of the fee award).

B. **Permissive Intervention**

The Court also finds permissive intervention inappropriate. For the most part, Intervenors do not present distinct arguments in favor of permissive and mandatory intervention; the reasoning above thus similarly favors denial of their bid for intervention under Rule 24(b). *See In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 n.5 (2d Cir. 2003) ("[I]nsofar as we affirm the District Court's denial of [the] motion to intervene as a matter of right, we need not also examine its denial of permissive intervention," given that "[s]ubstantially the same factors are considered in determining whether to grant an application for permissive intervention."). In any event, additional factors—specifically, the need to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights"—support the same result. Fed. R. Civ. P. 24(b)(3).

Even though Intervenors' claims share "common question[s] of law or fact with" plaintiffs' claims, Intervenors objections (should they have any) "are more properly addressed during the fairness hearing, in conjunction with those of other likely objectors." *Athale*, 2013 WL 2145588, at *3. Both the Second Circuit and courts in this District have repeatedly held that existing parties may be prejudiced—and therefore denied permissive intervention—where intervenors sought merely to challenge a settlement with which they had substantive disagreements. *See, e.g.*, *In re Holocaust Victim Assets Litig.*, 225 F.3d at 202 ("Appellants insist that they ought to be permitted to intervene at least to state their objections to the

17

Settlement. However, the District Court has discretion to deny this request, particularly where, as in this case, the proposed intervenors have already had an opportunity to state their objections before the Court."); *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73–74 (2d Cir. 1994) ("[G]iven that the parties to the action had already agreed to the terms of the consent decree, and that intervention would require renegotiation, . . . it was not an abuse of discretion for the district court to deny permissive intervention."); *Athale*, 2013 WL 2145588, at *3 ("[I]ntervention at this point in litigation, after designation of a lead plaintiff and after the parties entered into an MOU, but before class determination or the fairness hearing, would cause undue delay and prejudice by derailing the current settlement process at a point when Sammons still has ample opportunity to protect his rights through the regular class action settlement process."); *In re NASDAQ*, 187 F.R.D. at 490 ("The Second Circuit has noted on several occasions that 'jeopardizing a settlement agreement causes prejudice to the existing parties to a lawsuit.'" (quoting *Pitney Bowes*, 25 F.3d at 72) (collecting cases)); *see also T.K.*, 2021 WL 1172767, at *7 ("Although the motion is timely and [intervenor's] claim shares common questions of law and fact with those asserted in this action, permissive intervention would not serve the interests of justice because, among other factors, [intervenor] can pursue fully his objections to the Proposed Settlement to this Court." (citing *In re Holocaust Victim Assets Litig.*, 225 F.3d at 202)). In *Chen-Oster*, on which Intervenors rely, the Court expressly based its grant of permissive intervention on the fact that the action stood "in stark contrast to cases . . . where intervention threatened to upset settlements among the original parties and revive litigation that had effectively been resolved." 2015 WL 4619663, at *11.[12] This case involves precisely such a threat.

---

[12] Intervenors argue that their intervention would not cause undue delay because the parties had "not yet moved for preliminary approval of the nationwide settlement" when they sought

18

Because Intervenors may pursue any challenges to the settlement agreement through objections under Rule 23 or may elect to opt out of the class action to preserve their own claims, and because intervention at this stage of the litigation would risk undoing the parties' negotiated settlement, the Court declines to grant Intervenors' motion under Rule 24(b).

## CONCLUSION

For the foregoing reasons, the Court denies the motion to intervene. The Clerk of Court is respectfully directed to terminate the motion pending at docket 61.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: May 13, 2021
       New York, New York

---

intervention. Int. Mem. at 13. But when Intervenors made that claim, the parties had already announced their settlement and Intervenors knew that the parties intended to move for preliminary approval within a week of Intervenors' motion. *See* Dkts. 37, 41, 42–43.